# EXHIBIT A

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

_____ DISTRICT OF Massachusetts _____

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

The software and memory of one Macintosh Computer eMac A1002 bearing serial number 3DBJXDW20RH

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 04M-1025-JGD

I _____ Khela Vazquez _____ being duly sworn depose and say:

I am a(n) ___ Special Agent, Department of Interior, Office of Inspector General ___ and have reason to believe
                                          Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

The software and memory of one Macintosh Computer eMac A1002 bearing serial number 3DBJXDW20RH

in the _____ District of _____ Massachusetts _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

images of children engaging in sexually explicit conduct, as defined in 18 U.S.C. section 2256, and files and data related to the knowing receipt and/or possession, in interstate commerce, of such images

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, or other items illegally possessed, property designed for use, intended for use, or used in committing a crime

concerning a violation of Title ___ 18 ___ United States code, Section(s) ___ 2252(a)(2) and (a)(4)(B) ___.

The facts to support a finding of Probable Cause are as follows:

See Attached Affidavit

I have reviewed the images described in the affidavit attached hereto, and find that there is probable cause to believe that they depict minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256. The attorney for the government is directed to retain these images in its custody during the pendency of this litigation.

Judith Gail Dein
United States Magistrate Judge

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

Signature of Affiant

Sworn to before me, and subscribed in my presence

3/11/04                                        at    Boston, Massachusetts        278
Date                                                 City and State

Judith Gail Dein, United States Magistrate Judge
Name and Title of Judicial Officer                   Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## RELEVANT STATUTES

4. Title 18, United States Code, Section 2252, makes it illegal for any person to knowingly transport, ship, receive, distribute, reproduce for distribution, sell, possess with intent to sell, or possess visual depictions that affect interstate commerce, if: (1) the production of such visual depiction involves the use of a minor engaged in sexually explicit conduct; and (2) such visual depiction is of such conduct. Each subsection of Section 2252 specifically refers to computers as one means by which a visual depiction may travel in and/or otherwise affect interstate commerce.

5. Title 18, United States Code, Section 2256, provides the definitions for Section 2252. A "minor" is any person under the age of 18 years old. "Sexually explicit conduct" includes actual or simulated sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal), bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person. "Producing" means producing, directing, manufacturing, issuing, publishing or advertising. A "visual depiction" includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.

6. For purposes of this affidavit, any individual under the age of 18 will be referred to as a "child" or "minor," and any visual depiction of a child or minor engaging in "sexually explicit conduct," as that term is defined in Title 18, United States Code, Section 2256, will be referred to as "child pornography."

## AFFIDAVIT

I, Khela Vazquez, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Department of Interior (DOI), Office of Inspector General (OIG), and have held that position since September 12, 1999. My duties include the investigation of various federal crimes related to the United States, including violations of 18 U.S.C. §§ 2251-56, which pertain to the sexual exploitation of children. In my capacity as a Special Agent, I have received training from the Federal Law Enforcement Training Center pertaining to the preparation and execution of search warrants. Additionally, I have participated in the execution of several search warrants.

2. I submit this affidavit in support of an application for a search warrant for a Macintosh Computer model eMac A1002 bearing serial number YM24580FN9K, belonging to Andrew H. Lewis. Mr. Lewis is a National Park Service ("NPS") employee. The computer is currently in the possession of the NPS. There is probable cause to believe that the computer contains evidence of violations of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B), including images of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256, and files and data related to the knowing receipt and/or possession, in interstate commerce, of such images.

3. The following facts are based upon information communicated to me and the observations of fellow law enforcement officers. I have not included each and every fact known to me and to other officers regarding this investigation. Instead, I have included only those facts that I believe are necessary to establish probable cause for issuance of a search warrant.

1

## FACTS OF THIS INVESTIGATION

7. The Salem Maritime National Historic Site ("SAMA") is located at various locations in the City of Salem, including Derby Wharf, Richard Derby House, and the Custom House as described by the Secretarial Order Designating the site of March 17, 1938 – 3 F.R. 787. The Custom House is located at 178 Derby Street, Salem, Massachusetts, and is under the special maritime and territorial jurisdiction of the United States.

8. Randall Becker is a visitor use assistant at SAMA. Among other duties, he accesses and decides what treatment a government computer needs before it can be donated to local area schools. Typically, these computers are United States Government surplus from various park offices. Such computers are stored in a particular area located in the basement area of the Custom House.

9. On February 6, 2003, Mr. Becker retrieved a computer from the designated area and, believing it to be a government computer, began working on it at his work area in the library. Mr. Becker stated that the computer was sitting with the surplus government computers, and that there was no note, or sign stating that the computer was personal property. When Mr. Becker accessed the computer, he found various image files on its "C" drive. Becker was concerned, because the images he found on the computer appeared to be of young males and pornographic in nature. Becker found additional images of a grown naked man, who he identified as Andrew Lewis, Park Ranger, SAMA. Becker contacted Elizabeth Marcus, SAMA Administrative Officer and Michael Parr, Supervisory Park Ranger, SAMA.

10. On February 7, 2003, United States Park Ranger Christopher O'Shea went to Salem Maritime NHS to retrieve the computer that Becker had been working on. Ranger O'Shea brought the computer to the law enforcement offices of Boston National Historic Park. On that same date, Ranger O'Shea and Special Agent (SA) Glenn Van Neil began looking through the computer. The computer was accessed by simply turning it on with no passwords required to access information.

11. On the computer's "C" drive, in "My Documents," in a folder entitled "My Pictures" in a folder entitled "mpics," SA Van Neil found multiple pictures of young male subjects performing sexually explicit acts. The material on the computer is inappropriate for a federal employee to possess in a government office.

12. SA Van Neil observed that in addition to the pictures described above, on the computer's "C" drive, in "My Documents," in a folder entitled "My Pictures," in a folder entitled "dpics," there were pictures of Andrew Lewis. Andrew Lewis is known to SA Van Neil, as Lewis is a Law Enforcement Ranger employed by the NPS, and SA Van Neil had previously worked with him while they were both employed at the Statue of Liberty National Monument. Additionally SA Van Neil has had numerous encounters with Lewis since his transfer to SAMA in September, 2000.

13. On February 8, 2003, Ranger O'Shea and SA Van Neil went to Salem Maritime National Historic site to interview Lewis regarding the pictures on the computer. Lewis stated that he had brought the computer into work during the second or third week of January, 2003 to use as his personal work desktop computer, but that Elizabeth Marcus told him that he would not be allowed to use his personal computer at work. Lewis stated that after he was advised that he

4                                                                                                                           283

would not be allowed to use his personal computer at work, he placed the computer in a large green Tupperware container, and that he had placed a sign on it stating "Personal Property Do Not Touch." Lewis physically showed SA Van Neil the location in the SAMA basement where he placed the computer. Lewis indicated that the computer was placed directly next to a number of other computers that were surplus government property. Lewis stated that he had recently purchased a new computer to use at home. Lewis stated that he did view pornography on his computer, but that all sites that he visited contained a disclaimer that all persons were over 18 years of age.

14. On June 27, 2003 SA Van Neil and I went to SAMA to again interview Lewis regarding the contents of his computer. Lewis confirmed statements that he had made in the earlier interview, and provided additional information. Lewis admitted to viewing and downloading pornographic images off the Internet, but said that all the images were of adults. Lewis stated that he had only used the computer at home, and had never viewed inappropriate material at work using a government computer. Lewis stated that he owned a digital camera for taking pictures, and that he had sent pictures of himself to other people through email. Lewis also stated that he sent pictures that he received via email, and/or pictures he downloaded from the internet, to other people using email. Lewis was asked to provide consent for a search of his personal computer that was recovered from SAMA, a Gateway LC desktop computer Serial Number 0023072125. This computer was already in the government's possession. Lewis consented to the search, and provided a signed statement to that effect.

15. On July 15, 2003 the Gateway LC desktop computer Serial Number 0023072125 was sent by SA Van Neil to the DOI-OIG Information Technology Specialist for computer

5

284

forensic analysis. Specifically, it was requested that the hard drive (serial number 0269JIFNA02599) of the computer be reviewed for images that may contain child pornography.

16. On October 9, 2003, I received a report from Scott Grace, Information Technology Specialist, DOI-OIG, detailing the results of the Forensic Analysis conducted by Grace on Lewis' computer (Gateway LC desktop computer Serial Number 0023072125). The results of the forensic analysis revealed several images that, based on my training and experience, constitute child pornography as defined in 18 U.S.C. § 2256, all in unallocated space on the computer's hard drive. Specifically:

-Picture number 6: Found in unallocated clusters depicts the torso of a pre-pubescent female child touching her vagina while holding an article of clothing.

-Picture number 7: Found in unallocated clusters a picture showing the genital area of a pre-pubescent female child. There are two hands in the picture touching the vagina.

-Picture number 8: Found in unallocated clusters shows the buttocks of a pre-pubescent female child. The child has her hands on the buttocks revealing the anus. The child appears to be wearing the clothing that was seen being held by a female child in picture number 6.

-Picture number 9: Found in unallocated clusters shows a pre-pubescent female child displaying her vagina. The child is pulling blue underwear with her right-hand away, and is inserting her left thumb into her vagina. The child appears to be wearing the clothing that was seen being held by a female child in pictures number 6 and 8.

-Picture number 10: Found in unallocated clusters shows the torso and genitals of a pre-pubescent female child. An object appears to be inserted in the vagina.

-Picture number 12: Found in unallocated clusters shows the back and buttocks of a pre-pubescent female child. The child appears to be wearing the clothing seen in pictures numbered 6, 8, and 9. An object appears to be inserted in the vagina similar to picture number 10.

-Picture number 13: Found in unallocated clusters shows fingers inserted into the genitals of a pre-pubescent female child.

-Picture number 14: Found in unallocated clusters shows fingers inserted in to the vagina of a pre-pubescent female child.

-Picture number 15: Found in unallocated clusters shows the faces of two female children. One of the children is wearing the clothing that is visible in pictures 6, 8, 9, and 12. These images will be made available to the Court at the time I seek the search warrant in this matter.

17. The forensic report also revealed evidence that the computer's hard drive may have been sanitized. Some newsgroup information that had been deleted and overwritten was recovered. Specifically, Outlook Express – newsgroup information was recovered showing visits to "lolita" (common name for child pornography on the internet), "pre-teen," and "early teen" newsgroup sites were visited. Specifically:

-alt.binaries.pictures.erotica.amateur.lolita.dbx   File created on 6/19/02 at 11:09:16pm

-alt.binaries.pictures.erotica.early-teens.dbx   File created on 10/14/02 at 07:50:50pm

-alt.binaries.pictures.erotica.early-teens.firsthair.dbx   File created on 8/29/02 at 02:42:52pm

-alt.binaries.pictures.erotica.early-teens.hardcore.dbx   File created on 9/11/02 at 06:34:50pm

7

-alt.binaries.pictures.erotica.pre-teen.dbx  File created on 9/04/02 at 04:51:06pm

-alt.binaries.pictures.erotica.pre-teens.dbx  File created on 10/14/02 at 7:50:54pm

-alt.binaries.pictures.erotica.yong.dbx  File created on 6/25/02 at 06:46:02pm

-alt.binaries.pictures.erotica.young.dbx  File created on 10/14/02 at 07:50:58pm

-alt.sex.pre-teens.dbx  File created on 6/25/02 at 06:46:06pm

-alt.sex.young.dbx  File created on 7/14/02 at 07:32:06pm

Newsgroups are bulletin boards found on the internet where special interest groups can post and exchange information. When a person wishes to use a newsgroup, one needs to take a binary file and convert it so that it is a text message. A person can download the text file, and decode it into the original file (a picture). The standard syntax for newsgroups are descriptive (alt.binaries.pictures indicates that the files contained pictures).

18. On February 12, 2004, SA Van Neil accompanied Massachusetts State Police Trooper Thomas Neff, Essex County Computer Crimes Unit, to SAMA to interview Lewis regarding the results of the Forensic Analysis of Lewis' Gateway LC desktop computer Serial Number 0023072125, and to ask for consent to search the computer that he had said was located in his home. Lewis consented to a search of the computer at his residence and accompanied Trooper Neff and SA Van Neil to his residence at 190 Bridge Street, Apt. 3401, Salem Massachusetts. Lewis signed a consent to search form indicating his willingness to allow the search. Trooper Neff performed a manual search of a Macintosh Computer model eMac A1002 bearing serial number YM24580FN9K, and discovered what he believed to be images of child pornography, as well as inaccessible files with the titles "Lolita" and "Pre-teen." In the "Users" folder inside the Hard Drive window located on the computer, in the house icon (on a Macintosh

8

287

computer the house icon functions like another folder) was another window containing folders with the following labels: Desktop, Documents, Library, Movies, Music, Pictures, and Public Sites. In the "pictures" folder were a series of photos labeled "Cam." The series of pictures appeared to be consecutive, and depicted a young girl (who in Trooper Neff's opinion was under 18 years of age) first fully dressed, and then in various stages of undress up to and including full nudity, with the final pictures in the series depicting her apparently masturbating on a bed. Additionally, in the folder labeled "Movies," one MPEG file (movie file) of what appeared to be two males was found. One male was reclining and the upper half of his body was visible. He was blonde, and appeared to be under 18 years of age. Only the torso of the other male was visible and he appeared to be masturbating over the reclining male.

19. Trooper Neff seized the computer at that time, and SA Van Neil took custody of the computer for safe keeping.

20. On February 13, 2004, SA Van Neil was contacted at his office by Lewis. Lewis requested to meet with SA Van Neil at 12 noon on February 16, 2004 so he could make a statement.

21. On February 16, 2003, SA Van Neil and I met Lewis in the SAMA administrative office of Celia Stevens at 174 Derby Street Salem Massachusetts. Lewis was advised that the purpose of the meeting was in response to his request, the interview was voluntary, and that Lewis was under no obligation to speak with SA Van Neil or myself. Lewis proceeded to describe in detail his actions over the past three to four years as they relate his to accessing, viewing, and downloading child pornography. At the conclusion of this interview Lewis

provided a sworn statement. The following is a summary of the information contained in this statement, a copy of which it attached as Exhibit A hereto:

- Lewis advised that he has always been interested in seeing child pornography, but actually began viewing it approximately three to four years ago.

- Lewis admitted that he began accessing and downloading child pornography from his home and work computers approximately two years ago.

- Lewis used many search engines to search for pornography, and followed the trail to images including child pornography.

-Lewis advised that he knew he downloaded these images because it was necessary to download them in order to view them. Additionally, Lewis knew the images were downloaded because the images would remain on his computer after he closed the images. Lewis looked for pornographic images of children that were physically underdeveloped, or starting to develop.

-Lewis defined children as physically/sexually underdeveloped.

-Lewis estimated that the youngest pornographic images that he would look at were between eight and twelve years old.

-Lewis acknowledged that he could tell that the individuals in the pictures were not adults. The images were pornographic pictures of young girls being curious about their bodies.

-Lewis thinks that he may have wanted to be young again and remembered being curious about himself like the young people depicted in the images.

-Lewis stated that he has never acted on the thoughts of physically touching a child in a

sexual way.

-Lewis would obtain pornographic images of children through newsgroups on the internet. Lewis denied saving images to disks, stating he only saved images to the hard drive of his computers.

-Between approximately 2001 and 2002, Lewis accessed child and adult pornography using his government computer while on official duty as a commissioned law enforcement officer. Lewis would do this from his government computer located at the Custom House at SAMA.

-Lewis acknowledged that he knows that viewing and possessing child pornography is wrong and illegal, but he continued to do it.

-Lewis estimated that he has not viewed child pornography on his Macintosh computer for approximately one or two months.

-Lewis advised that he has an active membership in Yahoo Groups and his sign-on name is Ranger530Yahoo.com. Lewis visited a site on Yahoo Groups called "Zips to remember," which Lewis described as a collection of child pornography images. This site requires the user to be an active member in order to gain access.

-Lewis has also viewed pornographic movies containing children that he found on Yahoo Groups.

-Lewis visited a Yahoo site that captures images from webcams that contains images of child pornography.

-Lewis admitted that he looked at and downloaded child pornographic images at work and at home.

290

22. Based on my training and experience, individuals using computers to access pornography over the Internet leave evidence on their computers that can be recovered by a trained forensic computer specialist. I am aware that computer hardware, software, and electronic files may be important to a criminal investigation in two distinct ways: (1) the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data.

23. In this case, the warrant application requests permission to search and seize images of child pornography that may be stored on a computer, specifically the eMac, Model A1200, bearing serial number YM24580FN9K, belonging to Lewis, as well as files and data on the computer that show Lewis' knowing receipt and/or possession, in interstate commerce, of such images. The images constitute both evidence of a crime and contraband. I believe that, in this case, the computer hardware is a container for evidence, a container for contraband, and also itself an instrumentality of the crime under investigation.

24. Based on my knowledge, training, and experience, and information obtained from computer specialists and other law enforcement personnel, in order to completely and accurately retrieve data maintained on computer hardware or computer software, to ensure accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, the computer equipment often needs to be seized and subsequently processed by qualified computer specialists in a laboratory setting. This is true for the following reasons:

-Computer storage devices (such as hard disks, diskettes, tapes, laser disks, CDROMs, etc.) can store the equivalent of thousands of pages of information. Additionally, a user may seek to conceal criminal evidence by storing it in random order with deceptive file names. Searching authorities are required to examine all of the stored data to determine which particular files are evidence or instrumentalities of criminal activity. The sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data analysis on site.

-Searching and analyzing computer systems for criminal evidence is a highly technical process requiring expert skill in a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. Thus, it is difficult to know, prior to the search, which expert possesses sufficient specialized skills to best analyze the system and its data. No matter which system is used, however, data analysis protocols are exact and scientific procedures, designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password-protected, or encrypted files. Because computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive codes embedded in the system as booby traps), a controlled environment is essential to its complete and accurate analysis.

-The analysis of electronically-stored data, whether performed on site or in a laboratory or other controlled environment, may entail several different techniques, such as screening file directories and the files which they contain (similar to looking at the outside of a file cabinet for the markings it contains and opening a drawer to search for evidence); opening or reading the first few pages of such files in order to determine their precise contents; scanning storage areas

13

292

to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; or performing electronic key word searches through all of the electronic storage areas to determine whether there is language in such storage areas which is intimately related to the subject matter of the investigation.

-Due to the potential volume of data and the technical requirements for analyzing computer data, it is usually necessary that the computer equipment, software, data, and related instructions be seized and subsequently processed by qualified computer specialists in a laboratory setting. It may be the case, however, that some types of computer equipment can be more readily analyzed on site, thereby eliminating the need for the removal of the computer equipment from the premises. One factor in determining whether to analyze the computer on site or to remove it from the premises is whether the computer serves as a repository for evidence of a criminal offense and is subject to immediate seizure as such. Another determining factor is whether, as a repository for evidence, the computer can be more readily, quickly, and, thus, less intrusively, analyzed off-site, with due consideration given to preserving the integrity of the evidence. This is often dependent upon the amount of data and number of discreet files or file areas that must be analyzed, and that, in turn, is frequently dependent upon the particular type of computer hardware involved.

## CONCLUSION

25. Based on the foregoing, there is probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B), including images of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256, as well as files and data relating to the knowing receipt and/or possession, in interstate commerce, of such images, is located on Lewis' personal computer, an eMac, Model A1002, bearing serial number YM24580FN9K, which currently is in the custody of the National Park Service, DOI.

Khela D. Vazquez
Special Agent, DOI-OIG

Sworn to and subscribed before me this 11th day of March, 2004

Judith Gail Dein
United States Magistrate Judge