UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                ) Criminal No. 04-10317-RCL
                v.              )
ANDREW LEWIS                    )

**GOVERNMENT'S OPPOSITION TO DEFNDANT'S MOTION *IN LIMINE* TO ADMIT ADMISSION OF PARTY-OPPONENT**

The United States of America, by and through its attorneys United States Attorney Michael J. Sullivan and Assistant United States Attorneys Donald L. Cabell and B. Stephanie Siegmann hereby oppose the defendant's motion in limine to admit a statement attributed to the Solicitor General.  The defendant seeks to introduce into evidence the following statement he attributes to the U.S. Solicitor General in its reply brief in the unrelated case of <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002)a case unrelated to the present one:

> It is possible to produce computer images that are virtually indistinguishable from images of real minors engaged in sexually explicit conduct.

Even accepting that statements of the U.S. Solicitor General may in some circumstances be treated as a statement of a party opponent in a criminal prosecution, <u>see</u> <u>United States v. Kattar</u>, 840 F.2d 118 (1st Cir. 1988), the Court should deny the defendant's motion for the reasons stated below.

1.    **THE STATEMENT IS INCORRECT AND DOES NOT ACCURATELY RESTATE WHAT THE SOLICITOR GENERAL STATED IN ITS BRIEF.**

Of all the words contained in the excerpt at issue, perhaps the most critical word for the defendant's purposes is the broad, all encompassing word "*images*." That is because the defendant hopes to convince the Court and jury that the broad term "images" must include the 14 videos at issue here, thus entitling him to argue reasonable doubt on the ground that the government has already conceded elsewhere that the technology exists to generate computer images that are virtually indistinguishable from "videos" that appear to depict real minors. By contrast, and to demonstrate the point in the absurd, no one would seriously argue that the statement had any relevance if instead of the general word "images" it referred specifically to just one specific form of media such as silkscreen prints.

This point is important because the Solicitor General did not use the broad, all inclusive word "images." Rather, the Solicitor General used the specific limited word "photographs." The statement verbatim reads:

> Because it is possible to produce computer images that are virtually indistinguishable from **photographs** of real minors engaged in sexually explicit conduct, a defendant charged with distributing or possessing depictions of real minors engaged in sexually explicit conduct can argue that the images may, in fact, be computer-generated.

<u>See</u> 2001 WL 965533 *7 (U.S.)(emphasis added).  In the government's view, this correction makes plain that the Solicitor General was in fact referring only to the medium of "photographs," and thus undermines any basis for arguing that the statement has some relevance to the wholly different medium of videos at issue here.

    2.  **<u>EVEN CORRECTED, THE STATEMENT IS NOT RELEVANT.</u>**

To be sure, the defendant devotes most of his space to arguing that the statement must nevertheless be read to implicitly include videos because, somehow, the government's use elsewhere in its brief of the "deliberate selection of terms such as 'depictions,' 'offending material,' 'depictions of...activity' makes crystal clear that the government's admission encompassed all media and did not somehow limit its applicability to just photographs."  Def.'s Mem. at 2.  This argument fails easily.

Beyond simply arguing the point in wholly conclusory terms, the defendant just does not articulate how the terms "depiction" and "offending material" make it "crystal clear" that the Solicitor General must have been talking about videos. Regardless, the argument must fail as a matter of logic because it is based entirely on the false premise that the Solicitor General used the word "images."  Because he did not, and because he in fact used the word "photographs," the defendant's argument is untenable as a matter of common sense.

Further, the Solicitor General based the statement at issue on a Congressional Finding in 18 U.S.C. §2251 relating specifically to "photographs:"

> new photographic and computer imaging technologies make it possible to produce by electronic, mechanical, or other means, visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaged in sexual conduct.

S. Rep. No. 358, ¶5.  Further still, just prior to making the statement at issue referring to photographs, the Solicitor General does make a reference to movies, but only to address the unrelated argument whether movies using adults to depict minors could be viewed as unlawful pandering under 18 U.S.C. §2252A.  Reply Brief at 6, n. 1.  The Solicitor General then made clear by use of a new subheading in the reply brief that it was now going to address a separate issue, and only then made the statement at issue, using the word "photographs."  The reliance on a Congressional Finding coupled relating to photographs coupled with the structure of the Solicitor General's brief shows that the Solicitor General's use of the specific word "photographs" as opposed to "images" was deliberate and intended.

In short, the Solicitor General was talking about single frame photographs rather than videos and there is thus no basis to admit the statement.

3.    **THE STATEMENT IS UNFAIRLY PREJUDICIAL.**

Even assuming for the sake of argument that the statement had some relevance, although that is hard to see in this light, it would be unfairly prejudicial to admit it because the jury would be mislead into believing that photographs and videos are comparable or, more accurately, that it is as easy to use a computer to fabricate a photo as it is to fabricate a video.  That is simply not true.  It is generally accepted that  most standard films are shot at a rate of 24-30 frames per second.[1]  Thus, even a 60 second video shot at 24 frames per second would involve 1,140 frames. This underscores the principal danger in admitting the statement: no one has ever argued that the technology exists to fabricate videos depicting minors (or even adults) that are virtually indistinguishable from real ones.  Indeed, the Second Circuit noted exactly the same most recently in holding, along with every other

---

[1]    In the brief amount of time the government had to research and draft a response to the defendant's motion, the undersigned reviewed a number of Internet information sites discussing this issue.  In terms of data most helpful to the defendant, one site opined that, at a minimum, "to achieve the illusion of a moving image, the minimum frame rate is about ten frames per second."  Thus, a five minute video such as one of the videos at issue in this case would involve at least three thousand frames.

circuit, that the government is not required, after <u>Free Speech Coalition</u>, to present expert testimony proving the children are real:

> Moreover, it does not appear that video technology is so far advanced that a jury is incapable of determining whether a real child was used to make a video. (Citations omitted) Even the most technologically advanced films created without the use of real people are distinguishable from those created with real people.

<u>United States v. Irving</u>, 432 F.3d 401, 412 (2nd Cir. 2005).

This point is bolstered by the legislative findings of fact contained in 18 U.S.C. §2251. Just as the Solicitor General relied on one of those facts in making the statement at issue, a second, more recent 2003 Congressional Finding notes that, "[l]eading experts agree that, to the extent that the technology exists to computer generate realistic images of child pornography, the cost in terms of time, money, and expertise is –and for the foreseeable future will remain- prohibitively expensive."[2]

Alternatively, if the Court were still inclined to admit the (corrected) statement of the Solicitor General, the government would urge the Court to include this more recent Congressional Finding to ensure that the jury understand that the statement was not referring to videos. See <u>United States v. Marchand</u>, 308 F.

---

[2]This fact is contained in the section entitled "Congressional Findings Relating to Obsencity and Child Pornography", Number 11.

Supp.2d 498 (D.N.J. 2004). Notwithstanding the defendant's assertion to the contrary, courts have long recognized an authority to take judicial notice of legislative facts. <u>See</u>, <u>e.g.</u>, Muller v. Oregon, 208 U.S. 412, 419-21 & n. 1 (1908)(where Supreme Court took judicial notice of sociological research); <u>Driver v. Hinnant</u>, 243 F. Supp. 95 (E.D.N.C. 1965)(judicial notice of congressional finding defining alcoholic).

### **Conclusion**

For the foregoing reasons, the Court should deny the defendant's motion, or require it be supplemented to eliminate the risk of confusion to the jury.

                         Respectfully submitted,
                         MICHAEL J. SULLIVAN
                         United States Attorney


                    BY:  <u>/s/Donald L. Cabell</u>
                         Donald L. Cabell
                         Stephanie B. Siegmann
                         Assistant U.S. Attorneys
                         One Courthouse Way, Suite 9200
                         Boston, MA 02210
                         (617) 748-3100